UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DONNA RINGLING,<br>JOANN JANDREAU,<br>KATHRYN STANDY,<br>and KORY STANDY,<br><br>Defendants. | 4:17-CV-04006-KES<br><br><br>ORDER GRANTING<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT |

Plaintiff, the United States of America, moves for summary judgment against defendants, Donna Ringling, Joann Jandreau, Kathryn Standy, and Kory Standy under Federal Rule of Civil Procedure 56. Docket 43. Defendant Ringling opposed the motion. Docket 57. Defendants Jandreau, Kathryn Standy, and Kory Standy did not file any opposition. For the following reasons, the court grants plaintiff's motion for summary judgment against defendants.

## FACTUAL BACKGROUND

The undisputed facts are as follows:

Defendants Donna Ringling, JoAnn Jandreau, and Kathryn Standy are the daughters of the late Harold and Margery Arshem. Margery predeceased Harold. Defendant Kory Standy is the son of Kathryn Standy and the grandson of Harold Arshem (Arshem).

Arshem died testate on December 24, 1999. In his Last Will and Testament, executed on February 20, 1998, Arshem bequeathed his estate (the Estate) in equal parts to his three daughters. His will also contained a specific bequest of real property to Ringling as part of her one-third portion of the Estate. In his will, Arshem also nominated and appointed Ringling, Jandreau, and Kathryn Standy to serve as co-personal representatives of the Estate. The Estate included real property located in Charles Mix County and Lyman County, South Dakota, stocks and bonds, co-op shares, cash, CDs, bank accounts, two contracts for deeds, a retained life estate in real property located in Charles Mix County, life insurance proceeds, crops, household goods, farm machinery, equipment, and vehicles.

Prior to his death, Arshem bought several government H/HH series bonds. Thirteen of those bonds were jointly owned by Arshem and Ringling, but Ringling did not make any contribution toward the bonds. At the time of Arshem's death, the thirteen bonds were valued at $12,000. Arshem also jointly owned ten bonds with Jandreau. Jandreau did not make any contributions toward the bonds. At the time of Arshem's death, the ten bonds were valued at $12,500. Additionally, Arshem jointly owned seven bonds with Kathryn Standy. Like her sisters, Kathryn Standy did not contribute anything toward the bonds. At the time of Arshem's death, the seven bonds were valued at $6,500.

Along with the bonds, Arshem owned other property jointly with his daughters. Prior to his death, Arshem purchased two vehicles, a 2000 Dodge

Ram Pickup Truck and a 1994 Dodge Van. The pickup truck was titled in the name of Arshem and his three daughters. None of the daughters made any contribution toward the pickup truck. The van was titled in the name of Arshem and Kathryn Standy. Kathryn Standy made no contribution toward the van. At the time of his death, the pickup truck was valued at $25,000, and the van was valued at $8,000. Prior to his death, Arshem also added Kathryn Standy as a joint owner on his checking account at Community First Bank. Kathryn Standy never made any contribution to the checking account.

Arshem purchased two life insurance policies on his life prior to his death, New York Life Insurance Company Policy #xxx7361 and Continental General Insurance Company Annuity Policy #xxx8783. All three daughters were listed as the beneficiaries on the policies. At the time of his death, Arshem owned both policies outright, and the policies had a total value of $21,616.20.

Prior to his death, Arshem was involved in several transactions with his grandson, Kory Standy. The first transaction occurred on March 27, 1996, when Kory Standy entered into a contract for deed with Arshem to purchase real property located in Charles Mix County.[1] According to the contract, Kory Standy was to pay Arshem $32,000 for the property with an initial $100 due at or before the execution of the contract, $1,900 due on December 20, 1996, and the remaining balance paid in fifteen annual installments. On December 14,

---

[1] The property's legal description is: "The West Half of the Southeast Quarter (W½SE¼) in Section Thirty-two (32) in Township Ninety-nine (99) North, Range Sixty-six (66), West of the 5th P.M." Docket 45 ¶ 27.

1999, Arshem forgave the remaining balance of $27,600.96 due on the contract.

The second transaction between Kory Standy and Arshem occurred on May 9, 1996. In this transaction, Arshem conveyed a warranty deed to Kory Standy for the family farm located in Charles Mix County along with irrigation equipment and permits. In his conveyance, Arshem retained a life estate and the right to receive the rent income and profits during his lifetime. After Arshem's death, on January 24, 2000, the family farm's fair market value was appraised at $345,700.

The third transaction occurred on December 18, 1999. Kory Standy and Arshem entered into a contract for deed for real property in Charles Mix County.[2] According to the contract for deed, Kory Standy was to pay $90,000 to Arshem with an initial $10,000 due at or before the contract's execution and the remaining $80,000 paid in twenty annual installments. Kory Standy would not take possession, or receive the rent, issues, and profits until March 1, 2000. At Arshem's death, Kory Standy still owed $80,093.30 on the contract for deed.

Additionally, Kory Standy received other types of property from Arshem. On December 19, 1999, Arshem endorsed a certificate of deposit (CD) to pay off a note in the name of Arshem and Kory Standy. On the date the CD was

---

[2] The legal description is "The North Half of the Northeast Quarter (N½NE¼) in Section Twenty-eight (28) and the North Half of the Northwest Quarter (N½NW¼) in the Southwest Quarter of the Northwest Quarter (SW½NW¼) of Section Twenty-seven (27), all in Township Ninety-seven (97) North, Range Sixty-seven (67), West of the 5th P.M." Docket 45 ¶ 34.

cashed in, the value was $32,989.49. Of that amount, $28,845.44 was used to pay off the note and $3,779.21 (the remaining balance after the penalty for early withdrawal) was paid to Kory Standy. Also, in December of 1999, Arshem gave Kory Standy approximately 6,000 bushels of corn. At Arshem's death, these bushels were valued at $10,200.

In the First Judicial Circuit Court of the State of South Dakota, Ringling, Jandreau, and Kathryn Standy filed an application for informal probate and appointment of personal representative on December 31, 1999. On January 3, 2000, the First Judicial Circuit issued Letters of Representative to the daughters and docketed the probate case. In September of 2000, the Estate reported Arshem's real and personal property interests at the time of his death to the State of South Dakota as part of the probate proceeding. Attorney James Haar prepared the South Dakota Inheritance Tax Report and Information for Judicial Determination of Inheritance Tax. Kathryn Standy signed the document on behalf of the Estate. This report, however, incorrectly used county assessed values for the real property, instead of appraised values.

In June 2003, Stan Whiting was appointed by the court to serve as a special administrator over the probate proceeding after Ringling filed a petition. As special administrator, Whiting's duties included investigating issues contained in Ringling's petition, like whether a federal estate tax return was required. Around August 4, 2003, Whiting filed a motion in the probate proceeding asking for permission to file a federal estate tax return and to amend the state inheritance tax return. In his motion, Whiting stated that the

value of the real property should have been determined by the fair market values instead of the county assessed values. On August 13, 2003, the First Judicial Circuit ordered Whiting to file a federal estate tax return and amend the state inheritance tax return.

On April 14, 2008, on behalf of the Estate, Ringling signed Form 706, the federal estate tax return, and reported a gross estate of $834,336.00 and a net estate tax due of $28,939.00. Whiting mailed the form to the IRS on May 5, 2008. The IRS received it around May 15, 2008. When the Estate filed the Form 706, it did not make any payments. On the Form 706, the Estate reported its assets as: three pieces of real property, co-op shares, stocks, bonds, two contracts for deeds, cash, bank accounts, CDs, two life insurance policies, the corn crop gifted to Kory, the pickup truck, the van, and other miscellaneous property. The Estate also reported the values of the assets each defendant received. Kathryn Standy and Jandreau each received $121,988.00, Ringling received $121,987.00, and Kory Standy received $416,116.00.

On July 14, 2008, a delegate of the Secretary of the Treasury made assessments against the Estate totaling $65,874.80. The estate tax owed was $28,939.00, the late filing penalty was $6,511.27, the failure to pay penalty was $7,234.75, and the interest was $23,189.78. On that same day, the IRS sent the Estate a notice of assessments and demanded payment. About a month later, on August 18, 2008, the IRS sent the Estate a notice of intent to levy after the Estate failed to pay the tax liability. The IRS sent an additional notice of balance due and request to pay to the Estate on November 10, 2008.

On December 11, 2008, Whiting filed a petition in the probate proceeding for payment and an order releasing him of further duties. At that time, Whiting had filed a federal estate tax return, amended the state inheritance tax return, and advised the heirs the amount each owed for the federal estate tax. The IRS accepted the tax return as filed on December 17, 2008. On November 16, 2009, the IRS sent a third notice of balance and request to pay to the Estate.

On January 29, 2010, Ringling sent a request to the IRS to abate the penalties and interest on the Estate's tax liability. The IRS denied Ringling's request based on its finding that the information submitted did not establish reasonable cause or show due diligence. The IRS's letter also provided information on how to file a claim for refund or seek further IRS administrative review. Neither the Estate nor Ringling filed such a claim. For the next three years in November (2010, 2011, 2012), the IRS sent additional notices of balance due and requests to pay.

On April 18, 2011, Dennis Duncan, an attorney, forwarded a check to Ringling, Jandreau, and Kathryn Standy and attached a letter that advised the daughters that the federal estate tax remained due by the Estate. On July 15, 2013, each defendant received an IRS Form 10492, entitled "Notice of Federal Taxes Due," with respect to the Estate. A Notice of Federal Tax Lien was filed in Charles Mix County against the Estate on July 24, 2013. The notice was also sent to the Estate. No one requested a hearing on the lien on behalf of the Estate.

Since 2010, defendants have made some payments to reduce the Estate's tax liability. Ringling made two payments, one on February 22, 2010, for $4,300.49, and a second payment on March 22, 2010, for $241.32. Jandreau made a payment of $4,514.48 on September 5, 2017. Kathryn Standy made a payment of $4,514.48 on September 11, 2017. Kory Standy made a payment of $15,135.09 on October 2, 2017. As of May 25, 2018, the Estate had a remaining balance of $63,479.08 due on its tax liability.

The United States filed this case against defendants seeking a judgment against each defendant for personal liability for unpaid federal estate tax debt of Arshem's Estate under 26 U.S.C. § 6324(a)(2). Docket 1. Defendants Ringling and Jandreau each filed separate answers. Dockets 10, 15. On April 25, 2017, the Clerk of Court entered defaults against Kathryn Standy and Kory Standy under Federal Rule of Civil Procedure 55(a) for failure to answer the complaint or otherwise defend within the time limit under Federal Rule of Civil Procedure 12(a)(1). Docket 19. On May 4, 2017, Kory Standy sent a letter that was docketed as his Answer. Docket 20. On May 8, 2017, Kathryn Standy sent a letter to the court that was docketed as "Letter." Docket 21. Kathryn and Kory Standy have not made a request for the court to vacate the default. The United States now moves for an order granting summary judgment against all defendants under Federal Rule of Civil Procedure 56. Docket 43.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a). The moving party can meet its burden by presenting evidence that there is no dispute of material fact or that the nonmoving party has not presented evidence to support an element of its case on which it bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To avoid summary judgment, "[t]he nonmoving party may not 'rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.' " *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005) (quoting *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995)). Summary judgment is precluded if there is a genuine dispute of fact that could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, the court views the facts and the inferences drawn from such facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

### I.     Liability under 26 U.S.C. § 6324(a)(2)

The United States claims that defendants are liable for unpaid federal estate tax, penalties, and interest under 26 U.S.C. § 6324(a)(2). Docket 1. The United States moves for summary judgment on its claims arguing that no genuine dispute of material facts exists and it is entitled to judgment as a matter of law. Docket 43.

Defendants Jandreau, Kathryn Standy, and Kory Standy failed to respond to the United States's motion for summary judgment. Under Local Rule 56.1, "All material facts set forth in the movant's statement of material facts will be deemed to be admitted unless controverted by the opposing party's response to the moving party's statement of material facts." D.S.D. Civ. LR 56.1(D). Thus, in regard to defendants Jandreau, Kathryn Standy, and Kory Standy, the court accepts all of the facts contained within the United States's Statement of Undisputed Material Facts as undisputed. Ringling filed a response in opposition to the motion for summary judgment. Docket 57. Ringling also filed a Statement of Disputed Material Facts. Docket 58. The court will address the alleged disputes in the discussion that follows.

If an imposed federal estate tax is not paid when due, a transferee, surviving tenant, or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate under sections 2034 to 2042, is personally liable for such tax. 26 U.S.C. § 6324(a)(2). To establish liability under section 6324(a)(2), the government must prove: (1) the estate tax was not paid when due and (2) the transferee, surviving tenant, or beneficiary received property included in the gross estate under sections 2034 to 2042. *Nason v. Comm'r*, 51 T.C.M. (CCH) 1455 (T.C. 1986); *Groetzinger v. Comm'r*, 69 T.C. 309, 316 (T.C. 1977).

### A. Arshem's estate tax was not paid when due.

The first element the United States must prove is that the estate tax was not paid when due. *Nason*, 51 T.C.M. at 1455. Estate tax returns must be filed

within nine months from the date of the decedent's death. 26 U.S.C. § 6075. Here, the estate tax return for the Estate was filed eight years after Arshem's death. Arshem died on December 24, 1999. Docket 45-2. On April 14, 2008, Ringling, on behalf of the Estate, signed the Form 706 and reported a gross estate amount and a net estate tax amount. Docket 45-13 at 1; Docket 45-45 at 14. On July 14, 2008, a delegate of the Secretary of the Treasury made assessments against the Estate for a total of $65,874.80. Docket 45-46 ¶¶ 4, 5; Docket 45-20 at 1. This amount included the original estate tax, two penalties, and interest. Docket 45-46 ¶¶ 4, 5; Docket 45-20 at 1. On December 16, 2008, the IRS sent the Estate an Estate Tax Closing Letter to notify the Estate that its return was accepted as filed. Docket 45-23. Since the initial assessment, interest continued to accrue, and defendants made some payments. The payments made in 2010 and 2017 totaled $24,165.05. Docket 45-46 ¶¶ 7-8. As of May 25, 2018, the Estate's estate tax liability was not fully paid, and the remaining liability was $63,479.08. *Id.* ¶ 9.

Ringling does not contest any of the amounts contained within the evidentiary support of the United States's motion. *See* Docket 57. In her response, Ringling's main contention is based on an error contained in the United States's motion for summary judgment and memorandum. *Id.* at 3. Ringling notes that the remaining tax liability amount in the United States's memorandum was $63,470.08 (Docket 44 at 6), but the evidence supporting the United States's motion stated the liability amount was $63,479.08 (Docket 45-46). Docket 57 at 3. Ringling argues that this "discrepancy is material and

forbids summary judgment." *Id.* In its reply, the United States admits that there were inconsistencies between its motion/memorandum and the supporting evidence, but states that the inconsistencies were due to a systemic typographical error. Docket 59 at 3.

Once the moving party has met its initial burden, the nonmoving party must establish "that a fact . . . is genuinely disputed" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). Rule 56 requires Ringling to support her assertions that a fact is disputed by citing to materials in the record like depositions, documents, affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1). Here, Ringling only points to an inconsistency contained in the United States's motion/memorandum. These two documents are not included within the list of citable materials in Rule 56 and cannot be used to support Ringling's factual position. *See, e.g.*, *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) (stating legal memorandums are not evidence and "cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists"); *Skyline Corp. v. NLRB*, 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence.").

Additionally, to deny summary judgment, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Here, the incorrect liability dollar amount in the

motion/memorandum would not be admissible evidence for a jury to consider. Conversely, the United States cites to admissible evidence that contains the correct liability dollar amount. Docket 44 at 6 n.24. In her declaration, Revenue Officer Advisor, Sheryl McCanlies, states the Estate's balance as of May 25, 2018, is $63,479.08. Docket 45-46 at 3.

Overall, Ringling has not provided any evidence that the liability amount of $63,479.08 contained in McCanlies's declaration is disputed. Ringling incorrectly states that Form 4340 states the unpaid liabilities as of May 25, 2018, was $61,399.99. Docket 57 at 3. Form 4340 actually states that balance of $61,399.99 was the amount due as of August 8, 2014. Docket 45-47 at 4. Based on these reasons, the court rejects Ringling's argument that this typographical error creates a genuine dispute of material fact and precludes summary judgment. The court finds that the undisputed facts show Arshem's estate tax was not paid when due.

**B.    Defendants received property included in the gross estate.**

The second element the United States must prove is that the transferee, surviving tenant, or beneficiary received property included in the gross estate. *Nason*, 51 T.C.M. at 1455. The gross estate includes all property, real or personal, tangible or intangible, wherever situated, at the time of the decedent's death. 26 U.S.C. § 2031(a). Sections 2035 through 2042 list the different types of property and how each type is included in the gross estate valuation. 26 U.S.C. §§ 2035-2042. Each defendant is liable based on the property each defendant received from the Estate, to the extent of the

property's value measured at the time of the decedent's death. 26 U.S.C. § 6324(a)(2).

The United States states it is undisputed that defendants are transferees, surviving tenants, or beneficiaries who had property on the date of Arshem's death or received property as a result of his death. Docket 44 at 7. None of the defendants contest the United States's Statement of Undisputed Material Facts as they relate to this second element.

First, the United States states the undisputed facts show Arshem made transfers of a corn crop and a certificate of deposit to Kory Standy, and that Arshem forgave the balance due on a contract for deed in a transaction between him and Kory Standy. Docket 44 at 12. The United States argues these gifts are includible in the gross estate under section 2035 because the transfers were made within the last month of Arshem's life. *Id.* at 13. The court agrees. The gross estate includes property the decedent transferred within three years of his death. 26 U.S.C. § 2035(c)(1).

The undisputed facts show Kory Standy received these three gifts within the three-year time period before Arshem's death. First, Kory Standy admitted in his deposition that he received the corn crop in 1999 from Arshem. Docket 45-43 at 26. Second, Arshem signed the certificate of deposit over to Kory Standy and executed the CD's authorization on December 13, 1999. *Id.* at 22, 24. Kory Standy stated Arshem wanted to sign the CD over to him, instead of having Kory Standy pay the Estate. *Id.* at 21-22. Kory Standy stated he received $3,779 from the CD. *Id.* at 22-24. Lastly, Kory Standy stated that one

14

month before Arshem's death, Arshem deeded the property over to Kory Standy, even though Kory Standy still owed Arshem money for it. *Id.* at 13; Docket 45-31 (Contract for Deed). Kory Standy said his grandfather wanted to "will it, give it . . . sign it over to [him]." Docket 45-43 at 13. Because these transfers from Arshem to Kory Standy occurred within the last year of Arshem's life, these gifts are includible in the gross estate under section 2035 and are considered section 6324(a)(2) property. Kory Standy, as a transferee of section 6324(a)(2) property, is liable for the unpaid portion of the Estate's liability in an amount that takes into account the value of the gifts.

Next, the United States states the undisputed facts show Arshem retained a life estate in the family farm during a transaction with Kory Standy. Docket 44 at 11-12. The United States argues the family farm should be included in the gross estate under section 2036. *Id.* at 11. The court agrees. The gross estate includes all property the decedent has transferred in which he retained an interest for his life or for any period that does not end before his death. 26 U.S.C. § 2036. This retained interest can be the possession or enjoyment of the property, the right to the income from the property, or the right to designate the people who possess or enjoy the property. *Id.*

The undisputed facts show that Arshem retained a life estate in the family farm when he transferred it to Kory Standy. In 1995, Arshem signed a warranty deed, transferring the family farm to Kory Standy. Docket 45-43 at 9. Kory Standy stated Arshem retained a life estate to the family farm and resided there until shortly before his death. *Id.* at 11. Additionally, the warranty deed

from Arshem to Kory stated, "Grantor retains a life estate and to receive the income rents and profits during his life time." Docket 45-30 at 2. Because Arshem retained a life estate, the family farm is includible in the gross estate and is considered section 6324(a)(2) property. Kory Standy, as a transferee of section 6324(a)(2) property, is liable for the unpaid portion of the Estate's liability in an amount that takes into account the value of the family farm.

The United States states the undisputed facts show Ringling, Jandreau, and Kathryn Standy each jointly owned property with Arshem at the time of his death. Docket 44 at 9. The United States argues this property is in includible in the gross estate under section 2040. *Id.* The court agrees. The gross estate includes all property the decedent and any other person held as joint tenants with right of survivorship except such property that has been shown to originally belong to the joint owner and never was received or acquired by the joint owner from the decedent for less than adequate and full consideration. 26 U.S.C. § 2040(a).

The undisputed facts show the daughters owned various pieces of property jointly with Arshem. First, Arshem jointly owned government bonds with each of his daughters. Ringling admits she received thirteen bonds. Docket 45-45 at 12. Jandreau stated she jointly owned ten bonds with Arshem and received those bonds as part of her one-third share of the Estate. Docket 45-42 at 16. The South Dakota Inheritance Tax Reports lists the bonds as jointly owned by Arshem and Ringling (13 bonds), Jandreau (10 bonds), and Kathryn Standy (7 bonds). Docket 45-6 at 11. Also, none of the three daughters

provided any contribution for the bonds. Whiting advised the daughters the bonds would likely be fully taxable in the Estate because the daughters made no contribution to them. Docket 45-12 at 1.

Second, Arshem also jointly owned his pickup truck with his daughters. The South Dakota Inheritance Tax Reports lists the pickup truck as jointly owned by Arshem and Ringling, Jandreau, and Kathryn Standy. Docket 45-6 at 11. Ringling admitted she received 1/3 of the pickup truck. Docket 45-45 at 12. After Kathryn Standy sold the truck for $25,000, Ringling, Jandreau, and Kathryn Standy received a third of the proceeds. Docket 45-42 at 17; Docket 45-45 at 14. Additionally, Arshem jointly owned his van with Kathryn Standy. The South Dakota Inheritance Tax Reports lists the van as jointly owned by Arshem and Kathryn Standy. Docket 45-6 at 11. Ringling stated Kathryn Standy received the van, which was valued at $8,000. Docket 45-45 at 14. Whiting also advised the defendants that the pickup truck and van would be fully taxable because the daughters made no contribution to the purchase of either vehicle. Docket 45-12 at 1.

Third, Arshem jointly owned one of his checking accounts with Kathryn Standy. Kathryn Standy was listed as a co-owner with rights of survivorship of Arshem's checking account at Community First Bank. Docket 45-44 at 7; Docket 45-36. After she was added in December of 1999 and after Arshem's death, she continued to write checks and have access to the account. Docket 45-44 at 7.

Thus, the property jointly owned by defendants Ringling, Jandreau, and Kathryn Standy and Arshem at the time of his death is includible in the gross estate and is considered section 6324(a)(2) property. Ringling, Jandreau, and Kathryn Standy, as surviving tenants, are liable for the unpaid portion of the Estate's liability in an amount that takes into account the value of the bonds, two vehicles, and checking account.

Lastly, the United States states Ringling, Jandreau, and Kathryn Standy received proceeds from life insurance policies. Docket 44 at 10. The United States argues the two life insurance policies of Arshem should be included in the gross estate under section 2042. *Id.* The court agrees. The gross estate includes life insurance policies that the decedent possessed at his death. 26 U.S.C. § 2042. The undisputed facts show Arshem purchased a life insurance policy from New York Life Insurance Company in the 1940s. Docket 45-6 at 4. This insurance policy was valued at $3,337.65, and the beneficiaries were Kathryn Standy, Ringling, and Jandreau. *Id.* Arshem also purchased an annuity policy from Continental General Insurance Company in 1987. *Id.* This policy was valued at $18,278.55, and the beneficiaries were Kathryn Standy, Ringling, and Jandreau. *Id.* Thus, the two life insurance policies are includible in the valuation of the gross estate and are considered section 6324(a)(2) property. Ringling, Jandreau, and Kathryn Standy, as beneficiaries, are liable for the unpaid portion of the Estate's liability in an amount that takes into account the value of the two life insurance policies.

Defendants Jandreau, Kathryn Standy, and Kory Standy failed to refute any of the United States's Statement of Undisputed Material Facts by not responding to the United States's motion for summary judgment. Ringling's response (Docket 57) only disputed one factual issue, which the court resolved above in favor of the United States. Thus, the court deems the United States's facts to be undisputed. As discussed above, the undisputed facts establish defendants' liability under 26 U.S.C. § 6324(a)(2).

## II.    **Affirmative Defenses**

In her answer, Ringling asserted several affirmative defenses. Docket 10. Ringling alleged that the United States's claims were barred by the doctrines of accord and satisfaction, waiver, estoppel, statute of limitations, and reasonable care. *Id.* ¶¶ 8-11. The United States filed a motion to strike the affirmative defenses (Docket 22), which the court denied (Docket 32). Additionally, Ringling filed a response to the United States's motion for summary judgment (Docket 57) and provided additional facts in her Statement of Disputed Material Facts (Docket 58). The United States filed objections to Ringling's Additional Material Facts. Docket 60.

A nonmoving party can resist a motion for summary judgment by " 'asserting affirmative defenses which it has the burden to prove' and supporting those defenses with specific facts." *Hiland Partners GP Holdings, LLC v. Nat'l Union Fire Ins. Co.*, 847 F.3d 594, 601 (8th Cir. 2017) (quoting *Midwest Oilseeds, Inc. v. Limagrain Genetics Corp.*, 387 F.3d 705, 714 (8th Cir. 2004)). The nonmoving party must "identify specific facts in the record showing

its defenses raised a triable issue against its liability." *Midwest Oilseeds, Inc.*, 387 F.3d at 714. The nonmoving party cannot rely solely on its pleadings to support its affirmative defenses. *See McLaughlin v. Esselte Pendaflex Corp.*, 50 F.3d 507, 513 (8th Cir. 1995).

### A. Estoppel, Waiver, Accord and Satisfaction

For an equitable estoppel defense, "[t]he claimant bears the 'heavy burden' of establishing that the government engaged in affirmative misconduct." *Bartlett v. U.S. Dep't of Agric.*, 716 F.3d 464, 475 (8th Cir. 2013) (quoting *Morgan v. Comm'r*, 345 F.3d 563, 566 (8th Cir. 2003)). If affirmative misconduct is shown, then the claimant must prove the four traditional elements of estoppel:

> (1) a "false representation by the government;" (2) government intent to induce the claimant to act on the misrepresentation; (3) a lack of knowledge or inability to obtain true facts on the part of the claimant; and (4) the claimant's "reliance on the misrepresentation to his detriment."

*Id.* at 475-76 (quoting *Rutten v. United States*, 299 F.3d 993, 995 (8th Cir. 2002)).

To prove waiver, there must be "evidence of a voluntary and intentional relinquishment or abandonment of a known right." *Haghighi v. Russ.-Am. Broad. Co.*, 173 F.3d 1086, 1088 (8th Cir. 1999).  To prove accord and satisfaction, there must be:

> (1) an accord or agreement, in which one of the parties agrees to extend to the other, in satisfaction of a claim, something other than, or different from, that to which the other party considers himself entitled; and (2) a satisfaction, consisting of the actual execution or performance of the accord.

*Goldstein Oil Co., v. Sun Oil Trading Co.*, 624 F. Supp. 730, 733 (E.D. Mo. 1985).

In her Statement of Disputed Material Facts, Ringling offered additional facts. Docket 58 at 14. One of Ringling's offered material facts was that in 2014, defendants had one or more meetings with an IRS employee about the Estate's deficiency. *Id.* Ringling alleges that the IRS employee made statements to defendants that led them to believe that the interest and penalties would be waived. *Id.* The United States denies this alleged fact and argues that Ringling provides no evidentiary support for the statement. Docket 60 at 2.

Rule 56(e) states that "[i]f a party fails to properly support an assertion of fact . . . the court may grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]" As the nonmoving party, Ringling cannot "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." *Mosley*, 415 F.3d at 910 (internal quotation omitted).

Here, Ringling failed to properly support her assertion of facts as contained in her Statement of Disputed Material Facts, because she provided no citations to the record. Instead, Ringling cited to her brief in response to the United States's motion to strike (Docket 26). Docket 58 at 14. Her brief contains mere allegations that defendants met with an IRS employee. Docket 26 at 2. Even in her brief, Ringling provided no evidentiary support. She does not cite to any depositions of defendants or affidavits discussing any of these

facts or cite to any other material in the record that could support such allegations. Ringling cannot rely on allegations in order to overcome the United States's motion for summary judgment. *See Celotex Corp. v*, 477 U.S. at 324 (stating Rule 56 allows a summary judgment motion to be opposed by any kind of evidentiary material listed in Rule 56(c), "except the mere pleadings themselves").

Ringling alleges that the United States must resolve all of the factual issues supporting Ringling's defenses. Docket 57 at 7. But case law holds that the moving party does not need to support its motion with affidavits or other evidence negating the nonmoving party's claim. *Celotex Corp.*, 477 U.S. at 323. "The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* Ringling has the burden of proof to establish that the elements of her affirmative defenses are disputed. She has not done that here. Instead, she relied on allegations contained in her brief and provides no evidence at all to support her alleged facts. Ringling cannot rely on her pleadings "but must set forth specific facts" that prove the elements of her claim. *McLaughlin*, 50 F.3d at 513. There is no evidence in the record that defendants had a meeting with an IRS employee. The court finds that Ringling failed to meet her burden in establishing these affirmative defenses and therefore cannot use them to resist the United States's motion for summary judgment.

## B.  Reasonable Cause

If someone fails to file a tax return or fails to pay a tax before its due date, an additional amount can be added to the tax liability. 26 U.S.C. § 6651. A person can avoid this additional liability if the taxpayer can show that such failure was due to reasonable cause. *Id.* Reasonable cause can be established when "a taxpayer shows that he reasonably relied on the advice of an accountant or attorney that it was unnecessary to file a return, even when such advice turned out to have been mistaken." *United States v. Boyle*, 469 U.S. 241, 250 (1985).

In her answer, Ringling asserted an affirmative defense of reasonable cause to avoid the penalties and interest that were added to the Estate's tax liability. Docket 10 ¶¶ 10-11. Ringling alleged that she exercised due care in engaging a tax attorney to advise them on whether the Estate owed an estate tax. *Id.* ¶ 11. Additionally, in her Statement of Disputed Material Facts, Ringling offers an additional fact that she and the other co-personal representatives did not initially pay the federal estate tax based on their good faith reliance on the Estate's tax attorney's advice. Docket 58 at 14. The United States objects and argues that Ringling provided no evidentiary support for this statement. Docket 60 at 1. Ringling offers a second material fact that she paid what she believed to be her share of the remaining unpaid tax deficiency, after she was informed that a balance remained. Docket 58 at 14. The United States admits that Ringling made a payment toward the Estate's liability, which the undisputed facts show. Docket 60 at 2. The United States, however, objects to

23

the remainder of Ringling's alleged fact because it is not supported by the record. *Id.*

To resist the United States's motion for summary judgment, Ringling has the burden to prove the elements of reasonable cause and support them with specific facts. *Hiland Partners GP Holdings, LLC*, 847 F.3d at 601. In her response to the motion for summary judgment, Ringling argues that "the record is clear that Ringling did not file a Federal estate return because of her good faith reliance on a tax attorney." Docket 57 at 6. But she provides no citation to the record to support this allegation. "[A] district court is not 'obligated to wade through and search the entire record for some specific facts which might support the nonmoving party's claim.' " *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1085 (8th Cir. 1999) (quoting *White v. McDonnell Douglas Corp.,* 904 F.2d 456, 458 (8th Cir. 1990)).

Ringling attempts to provide factual support for this defense by providing additional facts in her Statement of Disputed Material Facts (Docket 58). But Ringling did not support the facts with any evidence in the record. Similar to the alleged fact discussed above, Ringling attempts to support her allegation that she relied on the Estate's attorney's advice by citing to her answer (Docket 10) and her brief in response to the United States's motion to strike (Docket 26). Both documents contain mere allegations that Ringling paid what she believed to be her share of the deficiency and that Ringling relied on the Estate's attorney's advice. Neither document provides any citations to the record. Because Ringling did not identify any facts in the record to prove the

elements of reasonable cause, she has failed to meet her burden and cannot use the reasonable cause defense to resist the United States's motion for summary judgment.

### C.  Statute of Limitations

In her answer, Ringling alleges that the United States's claim is barred by the statute of limitations. Docket 10 ¶ 9. In her response, Ringling provides no argument or facts that support this defense. As a matter of law, personal liability under section 6324(a)(2) can be asserted by the United States ten years from the date the assessment is made against the Estate in accordance with section 6502(a). 26 U.S.C. § 6502(a)(1); *United States v. Botefuhr*, 309 F.3d 1263, 1277 (10th Cir. 2002) (listing case law that discusses section 6324's statute of limitation is determined by sections 6501 and 6502).

Here, the IRS made its assessment against the Estate on July 14, 2008. Docket 45 ¶ 43; Docket 45-46 ¶ 4. The United States filed this case within the ten-year statute of limitation, on January 23, 2017. Docket 1. Ringling has not provided any evidence to dispute these facts. Thus, she has failed to meet her burden to prove this affirmative defense and cannot use it to resist the United States's motion for summary judgment.

### CONCLUSION

Defendants are liable for the Estate's unpaid tax liability under 26 U.S.C. § 6324(a)(2). The undisputed facts show the Estate's federal estate tax was not paid when due and each defendant received property includible in the gross estate. Ringling cannot resist the United States's motion for summary judgment

with her affirmative defenses. She did not meet her burden because she failed to identify any specific facts in the record that supported her defenses. Thus, it is

ORDERED that the United States's motion for summary judgment (Docket 43) is granted.

IT IS FURTHER ORDERED that the United States must file a proposed order by February 26, 2019, that contains the total judgment amount due as of March 1, 2019, including penalties and interest, and the not to exceed amount for which each defendant may be held jointly and severally liable. Defendants may file objections by February 28, 2019.

Dated February 21, 2019.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE